Affirmed and Memorandum Opinion filed December 6, 2005









Affirmed
and Memorandum Opinion filed December 6, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00472-CR

____________

 

TYRONE LAVON
THOMAS A.K.A. TYRONE LAVON COPELAND, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 212th
District Court

Galveston County, Texas

Trial Court Cause No. 02CR0673

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Tyrone Lavon Thomas, was
convicted of murder.  The jury found an
enhancement paragraph true and sentenced appellant to fifty years= imprisonment and
a fine of $10,000.  In three issues,
appellant claims that the evidence is legally and factually insufficient to
support his conviction and that the jury charge was improper.  We affirm.








Factual and Procedural Background

On
February 25, 2002, police responded to a call reporting a suspicious
vehicle.  The responding officer
discovered the body of Albert Barnes lying in the back seat with his pockets
turned inside out.  Barnes had several
lacerations on his head, but the cause of death was a close-range gunshot wound
to the back of his head.  

The investigation
that followed led to several suspects, among them Julio Raveiro and Delena
Kent, who were interviewed by police. 
Kent first lied to police but then implicated Raveiro, appellant, and
Charles Aaron Williams, who were arrested. 
After his arrest, appellant initially refused to talk to police but then
made a voluntary statement.  In his
statement, appellant admitted he, Raveiro, and Williams made plans to rob
Barnes, a drug dealer.  Raveiro drove
appellant and Williams from Wichita Falls, Texas to Dickinson, Texas, where
Raveiro and Barnes lived, and took them to a hotel room.  Shortly thereafter, Raverio lured Barnes to
his home under pretense of buying crack cocaine.  Appellant and Williams were hiding outside
Raveiro=s home when Barnes
arrived.  Both appellant and Raveiro had
guns, although appellant claims his was unloaded.  As Barnes talked to Raviero outside the
house, appellant and Williams ambushed him. 
Appellant admits he held a gun to Barnes and kicked him while Raveiro
and Williams hit and kicked Barnes and emptied his pockets.  Appellant told police Barnes offered his
assailants more narcotics from his home, which they decided to retrieve.  Appellant, Kent, and Williams got inside
Barnes=s car, with
appellant in the front passenger seat and Barnes in the back seat with
Williams.  Kent drove Barnes=s car behind
Raveiro, who led in his own car.  At this
point, appellant claims the events deviated from the plan he admittedly had
made with Williams and Raveiro to rob Barnes. 
Raveiro motioned for Kent to stop near some woods, and then he got out
and approached Barnes=s car. 
Appellant said he protested the stop because he wanted to continue to
Barnes=s home to get the
narcotics.  Raveiro told appellant to get
in Raviero=s car, and as appellant did so, he heard a
single gunshot.  Appellant claims he did
not intend Barnes=s death but admits that after the robbery
and murder he, Williams, and Raveiro divided Barnes=s cash and
drugs.  








Kent provided a somewhat different account
to police and at trial.  According to
Kent, she heard the men discuss robbing Barnes in Wichita Falls and later saw
Raveiro obtain two pistols and some bullets. 
She witnessed appellant and Williams beat Barnes and drag him,
unconscious, to the back seat of his car. 
Kent testified that Raveiro forced her to drive Barnes=s car and that as
she drove, appellant sat in the passenger seat beside her and pointed his gun
at her.  Meanwhile, Williams sat in the
back and continued to hit Barnes with the other gun.  Kent testified Barnes awoke and appellant and
Williams told him Athey [were] going to kill him and they
wanted all his money.@ 
After the shooting, she saw appellant, Williams, and Raveiro divide
Barnes=s cash and drugs
at Raveiro=s home. 
At trial, Kent testified that Raveiro threatened to kill her brother if
she told anyone about the crime and made her help clean the blood at his
home.  Kent also testified she lied about
the murder at first to police because she feared for her brother, but she told
the truth after they agreed to protect him. 

Sufficiency of
the Evidence

In his first and second issues, appellant
argues the evidence is legally and factually insufficient to support his
conviction.  In conducting a
legal-sufficiency review claim attacking a jury=s finding of
guilt, we view the evidence in the light most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000).  We do not ask
whether we believe the evidence at trial established guilt beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318B19 (1979). 
Rather, we determine only whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Cardenas v. State, 30 S.W.3d 384, 389
(Tex. Crim. App. 2000).  In our review,
we accord great deference A>to the responsibility
of the trier of fact [fairly to] resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic facts to ultimate
facts.=@  Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996) (quoting Jackson, 443 U.S. at 319).  We presume that any conflicting inferences
from the evidence were resolved by the jury in favor of the prosecution, and we
defer to that resolution.  Id. at
133 n.13.








In conducting a factual-sufficiency review
of the jury=s determination, we do not view the
evidence Ain the light most favorable to the
prosecution.@  Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Instead, we view the evidence in a neutral
light and inquire whether the jury was rationally justified in finding guilt
beyond a reasonable doubt.  Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  We may find the verdict factually
insufficient in two ways.  First, when
considered by itself, the evidence supporting the verdict may be too weak to
support the finding of guilt beyond a reasonable doubt.  Id. 
Second, after weighing the evidence supporting the verdict, the
contrary evidence may be strong enough that the beyond-a-reasonable-doubt
standard could not have been met.  Id.  We must discuss the evidence appellant
claims is the most important in allegedly undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  However, we must
employ appropriate deference so that we do not substitute our judgment for that
of the fact-finder.  Zuniga, 144
S.W.3d at 482.  Our evaluation should not
intrude upon the fact-finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  Cain, 958 S.W.2d at 407.








The State may prove the offense of murder
by proving a defendant (1) intentionally or knowingly caused the death of an
individual or (2) intended to cause serious bodily injury and committed an act
clearly dangerous to human life that caused the death of an individual.  See Tex.
Penal Code Ann. _ 19.02(b)(1)B(2) (Vernon
2003).  The State may also establish the
offense of murder by proving a defendant intentionally entered a conspiracy to
perform an unlawful act, if a death was caused by any of the conspirators in
furtherance of the unlawful purpose and should have been anticipated as a
result of carrying out the conspiracy.  See
id. _ 7.02(b); Naranjo
v. State, 745 S.W.2d 430, 432, 434 (Tex. App.CHouston [14th
Dist.] 1988, no pet.) (upholding murder conviction where co-conspirators shot
and killed victim during aggravated robbery). 
Here, the jury charge authorized a murder conviction based on any of
these three theories of guilt, and the jury returned a general verdict of
guilt.  It is well established that where
the jury returns a general verdict, and the evidence is sufficient to support a
guilty finding under any of the allegations submitted, the verdict will be
upheld.  See Rabbani v. State, 847
S.W.2d 555, 558 (Tex. Crim. App. 1992); Hammond v. State, 942 S.W.2d
703, 706 (Tex. App.CHouston [14th Dist.] 1997, no pet.). 

Appellant argues the evidence on these
three alternative theories is legally insufficient.  Specifically, he argues that because he did
not personally shoot Barnes and because there is no evidence that Barnes was
killed as part of a conspiracy, the conviction cannot be sustained.  However, the jury charge also authorized the
jury to convict on the law of parties. 
Under the law of parties, a person is criminally responsible for an
offense committed by another if, acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense. 
Tex. Penal Code Ann.
_ 7.01(a).  Thus, if the jury found appellant was a party
to the offense, whether he pulled the trigger is irrelevant.  See Gutierrez v. State, 681 S.W.2d
698, 702B03 (Tex. App.CHouston [14th
Dist.] 1984, pet. ref=d). 
The evidence in this case clearly supports a conclusion that appellant
intentionally aided Williams and Raveiro in committing the offense.  Delena Kent witnessed appellant, Williams,
and Raveiro plan, prepare, and execute the robbery.  She said appellant used a gun provided by
Raviero to beat Barnes and to force her to drive Barnes=s car.  Appellant=s own statement
establishes that he helped Williams overpower, rob, and transport Barnes to
where he was killed.  Although appellant
claims he protested when the cars pulled over and when Barnes was shot, he
produced no corroborative evidence of his claim.  Rather, the facts that he split Barnes=s belongings and
failed to call police after the murder suggest otherwise.  Appellant also contends Kent=s testimony was
unreliable because it is self-serving and she admittedly smoked crack the night
of the murder.  However, the jury is the
sole judge of the credibility of the witnesses and the strength of the
evidence.  Fuentes v. State, 991
S.W.2d 267, 271 (Tex. Crim. App. 1999). 
A reasonable juror could have believed Kent=s testimony, much
of which coincided with appellant=s own account, and
disbelieved appellant=s statement that he did not intend Barnes=s death.  








Viewing the evidence in a light most
favorable to the verdict, we conclude the jury rationally could have found
beyond a reasonable doubt that appellant was criminally responsible as a party
for aiding Williams and Raveiro with intent to promote or assist the commission
of murder.  Viewing the same evidence in
a neutral light, we conclude the evidence is not too weak to support guilt
beyond a reasonable doubt, and the contrary evidence was not strong enough to
conclude that the reasonable doubt standard could not be met.  Thus, under the law of parties, the evidence
is legally and factually sufficient to support the verdict on the first two
theories.  Thus, we need not consider the
legal and factual sufficiency of the third theory of murder, conspiracy.  See Rabbani, 847 S.W.2d at 558; Hammond,
942 S.W.2d at 706.  Appellant=s first and second
issues are overruled. 

The Jury Charge

In his third issue, appellant contends
that the jury charge regarding conspiracy was erroneous.  We first determine whether error exists in
the charge.  Arline v. State, 721
S.W.2d 348, 351 (Tex. Crim. App. 1986). 
If error is found, we next determine whether the error was so
harmful as to require reversal of the conviction.  Id. 
The degree of harm required for reversal depends on whether the
error was preserved.  Id.  Here, appellant admittedly did not
preserve error, so he must show egregious harm.   Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984); see also Ngo v. State, No. PD-0504-04, __ S.W.3d
__, 2005 WL 600353, at *3B4, *8 (Tex. Crim. App. Mar. 16, 2005)
(finding egregious harm where jury charge allowed non-unanimous verdict and
prosecutor argued same); Hutch v. State, 922 S.W.2d 166, 174 (Tex. Crim.
App. 1996) (finding egregious harm where jury charge stated opposite of the
law).

The application portion of the jury charge
requires the jury to decide if A[appellant] and or
[Williams] and or [Raveiro]@ intentionally
entered a conspiracy to rob Barnes. 
Appellant argues this language permitted conviction even if he did not
enter the conspiracy.  We agree that
using both the conjunctive and disjunctive after appellant=s name is
potentially confusing.  Accordingly, we
find error exists in the charge.            








Having found error, we now consider
whether appellant suffered egregious harm. 
Arline, 721 S.W.2d at 351. 
In analyzing harm, the appellate court may consider (1) the charge
itself, (2) the state of the evidence, including contested issues and the
weight of the probative evidence, (3) arguments of counsel, and (4) any other
relevant information revealed by the trial record as a whole.  Hutch, 922 S.W.2d at 171; Taylor v.
State, 7 S.W.3d 732, 736 (Tex. App.CHouston [14th
Dist.] 1999, no pet.).  Here, the same
paragraph that contains the error also specifies that appellant must have
anticipated Barnes=s murder Aas a result of the
carrying out of the conspiracy.@  The jury charge correctly defines Aconspiracy@ and gives a
comprehensive explanation for when conspirators are responsible for acts of
co-conspirators.  Read together, the jury
charge requires appellant to enter a conspiracy to be responsible for the
criminal acts of co-conspirators. 
Further, even if the application paragraph on conspiracy was confusing,
the jury alternatively could have convicted appellant as a party.  See Loredo v. State, 130 S.W.3d 275,
283 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d) (AThe harmfulness of
error in the jury charge should be measured, at least in part, against the
likelihood that the jury=s verdict was based on an available
alternative theory of culpability that was not affected by the erroneous
portion of the charge.@). 
Moreover, the erroneous part of the charge concerns whether appellant
intentionally entered the conspiracy to rob Barnes.  Thus, because appellant conceded at trial and
on appeal that he planned to rob Barnes with Williams and Raveiro, the charge
error does not relate to a contested issue. 
See Hutch, 922 S.W.2d at 172 (pointing out that Awhether the error
related to a >contested issue=@ is relevant to
egregious harm analysis).  Finally, the
State correctly explained conspiracy law during its closing argument and
specifically referred to the erroneous paragraph.  Considering all the circumstances, we find
the error did not cause appellant egregious harm.  We overrule appellant=s third and final
issue.

The judgment of the trial court is
affirmed.

 

/s/      Leslie Brock Yates

Justice

 

Judgment
rendered and Memorandum Opinion filed December 6, 2005.

Panel
consists of Chief Justice Hedges, Justices Yates and Anderson.  (Anderson, J. concurring in result only.)

Do
Not Publish C Tex.
R. App. P. 47.2(b).