Affirmed and Memorandum Opinion filed April 27, 2006









Affirmed
and Memorandum Opinion filed April 27, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01126-CR

NO. 14-04-01127-CR

____________

 

JAMES DAVID
TOMLINSON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 230th
District Court

Harris County, Texas

Trial Court Cause Nos. 987,198
& 987,651

 



 

M E M O R A N D U M   O P I N I O N

Appellant James David Tomlinson was
convicted of aggravated sexual assault of a child under two separate
indictments and sentenced to twenty-five years= confinement in
each case, to run concurrently.  In a
single issue, appellant claims he received ineffective assistance of counsel at
trial.  We affirm.








Appellant lived in Indiana with his
daughter C.T., his son, and his first wife, who was the children=s mother, until
2002.  In 2002, when C.T. was five years
old, appellant=s wife died.  Thereafter, appellant and the children
briefly lived in Kansas before moving into appellant=s father=s apartment in
Houston.  In Houston, appellant met his
second wife, Kelly.  He moved with his
children into Kelly=s house in January 2003 and married her
the following November.

On May 8, 2004, Kelly arrived home and
found C.T. and appellant locked in a bedroom together.  Appellant opened the door after Kelly
knocked.  When Kelly asked appellant what
he and C.T. were doing in the bedroom, appellant claimed he had just spanked
C.T. because he caught her stealing. 
However, Kelly was suspicious because C.T. did not appear upset as
though she had been spanked and seemed surprised when Kelly later confronted
her about stealing.  Consequently, Kelly
asked her friend Joann Chavira to talk to C.T. about what she and appellant
were doing in the bedroom.  When Chavira
and C.T. were alone that evening, Chavira questioned C.T., who told Chavira
that she was having Aoral sex@ with appellant in
the bedroom.[1]  Later the same evening upon Chavira=s request, C.T.
repeated this information for Kelly, who immediately took C.T. to the police
and the hospital.  At the hospital,
forensic nurse examiner Sandra Martin examined and interviewed C.T.  C.T. told Martin that appellant Atried to have oral
sex with [her]@ and had put his penis in her vagina and
anus about five days earlier.  Police
arrested appellant later that night, and the State charged him with sexual
assaulting C.T. on April 2, 2004 and May 8, 2004.  After a consolidated trial, appellant was
convicted in each case.  He filed
separate motions for new trial that were overruled by operation of law.  This appeal followed.








At trial, C.T. testified that appellant
repeatedly sexually assaulted her, beginning when they lived in Indiana and
continuing in Kansas and Texas.  She had
difficulty recalling details about the sexual assaults.[2]  On cross-examination, she indicated that
appellant put his penis in her mouth on May 8, 2004 and in her anus and vagina
before that day.  

The State called several experts, including
Martin, Child Protective Services (AC.P.S.@) case worker
Angela Burrell, who was assigned to C.T.=s case, and
Houston Police Department (AH.P.D.@) investigator
Heidi Ruiz.  Martin testified that her
examination of C.T. revealed symptoms potentially attributable to sexual abuse.[3]  Martin noted that none of C.T.=s symptoms alone was unusual, but
together they created a Ahigh suspicion@ of sexual abuse.  She also testified that Amore than 50
percent of the time there are no genital injuries on children who are victims
of sexual abuse,@ even when sperm is found or the offender
confesses.  Ruiz testified that during
her investigation, she reviewed C.T.=s statements
regarding the abuse, including H.P.D.=s offense report
and the Children=s Assessment Center=s (AC.A.C.@) videotape, neither
of which were introduced into evidence. 
Ruiz said she found Ano inconsistencies@ among C.T.=s statements.  Burrell testified that she Asaw the narrative
from the investigator=s work@ but not Athe tape,@ and said that
after C.P.S.=s investigation, C.P.S. found A[r]eason to
believe@ C.T.=s sexual abuse
claim.








In his sole issue,
appellant claims his trial counsel was ineffective in failing to (1) engage in
pretrial discovery of the State=s experts or
object to their trial testimony, (2) seek a limiting instruction on extraneous
offenses,[4]
(3) require the State to make an election as to which offenses it relied upon
for conviction, and (4) object to improper closing argument by the State.[5]  

Ineffective assistance claims are governed
by the two-pronged test announced in Strickland v. Washington, 466 U.S.
668 (1984).  To prove ineffective
assistance, appellant must show (1) that counsel=s representation
was deficient, falling below the standard of prevailing professional norms, and
(2) a reasonable probability that the result of the proceeding would have been
different but for trial counsel=s deficient
performance.  Id. at 687B96; Salinas v.
State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  There is a strong presumption that counsel=s conduct fell
within the wide range of reasonable professional assistance.  Salinas, 163 S.W.3d at 740.  To defeat this presumption, A>any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.=@  Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999) (quoting McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996)).  Without
specific explanations for counsel=s decisions, a
record on direct appeal will rarely contain sufficient information to evaluate
an ineffective assistance claim.  See
Bone v. State, 77 S.W.3d 828, 830, 833 (Tex. Crim. App. 2002); Thompson,
9 S.W.3d at 813B14. 
Further, without such explanation, we do not find deficient performance
unless the challenged conduct was A>so outrageous that
no competent attorney would have engaged in it.=@  See Goodspeed v. State, No.
PD-1882-03, __ S.W.3d __, 2005 WL 766996, at *2 (Tex. Crim. App. Apr. 6, 2005)
(quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001)).  An affidavit from trial counsel
becomes almost vital to the success of a claim for ineffective assistance of
counsel if there is no hearing or if counsel does not appear at the
hearing.  Stults v. State, 23
S.W.3d 198, 208B09 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 









Here, appellant filed separate but substantively identical motions
for new trial that included general allegations of ineffective assistance of
counsel but were unaccompanied by affidavits or explanations for counsel=s decisions.  Appellant did not request a hearing on these
motions.  He subsequently filed an AOut of Time Appeal for a New Trial@ raising different complaints about
counsel=s performance than those he presents
on appeal.  Thus, the record is silent
regarding counsel=s decisions about which appellant now
complains.  

Appellant first complains that counsel was
ineffective in failing to file pretrial discovery motions regarding the State=s expert
witnesses, which he contends would have allowed him to preview their
opinions.  However, the failure to file
such pretrial motions could have been the result of trial strategy.  See Hammond v. State, 942 S.W.2d 703,
710 (Tex. App.CHouston [14th Dist.] 1997, no pet.).  Further, it is unclear whether counsel could
have otherwise obtained the State=s expert list,
thus rendering unnecessary the filing of pretrial motions for disclosure of the
State=s experts.[6]  Because counsel=s reasons for not
filing such motions could have been strategic, without an affirmative
demonstration of counsel=s ineffectiveness in the record, appellant
fails to overcome the strong presumption that counsel=s conduct was
reasonable.  See Thompson, 9
S.W.3d at 814.  








Appellant next claims counsel was
ineffective in failing to object to the trial testimony of three of the State=s experts.  Specifically, he alleges that (1) Burrell
impermissibly commented on C.P.S.=s opinion of his
guilt by testifying that C.P.S. found reason to believe that he sexually abused
C.T., (2) Martin improperly testified about the cause and diagnosis of C.T.=s injuries despite
her statement on cross-examination that A[she is] not a
medical expert in that field,@ and (3) Ruiz
impermissibly commented on his guilt and on facts not in evidence when she
testified that she found Ano inconsistencies@ among C.T.=s statements,
including the police statement and the C.A.C. videotape that were never
admitted into evidence.  Counsel=s failure to
object could have been the result of sound trial strategy.  See Banks v. State, No.
14-00-00650-CR, 2002 WL 27265, at *4 (Tex. App.CHouston [14th
Dist.] Jan. 10, 2002, pet. ref=d) (not designated
for publication) (A[F]ailure to object to even inadmissible
evidence can constitute a plausible trial strategy.@); Varughese v.
State, 892 S.W.2d 186, 196  (Tex.
App.CFort Worth 1994,
pet. ref=d) (noting that
failure to object can be part of trial strategy to be open and honest with
jury).  As previously discussed, the
record is silent as to why counsel did not object; thus, appellant fails to
overcome the presumption that counsel made a reasonable decision not to object
to the witnesses= testimony.  See Thompson, 9 S.W.3d at 814; Jones
v. State, No. 14-03-00499-CR, 2004 WL 438676, at *5 (Tex. App.CHouston [14th
Dist.] Mar. 11, 2004, pet. ref=d) (not designated
for publication) (finding silent record insufficient to establish whether
counsel was deficient by failing to object to trial testimony).  








Third, appellant contends counsel was
ineffective in failing to request a limiting instruction on extraneous evidence
that he sexually assaulted C.T. on more occasions than were charged in his two
indictments.  Specifically, appellant
argues that although the State charged him with one count each of orally and
vaginally penetrating C.T., the jury heard witness testimony that he penetrated
C.T. orally, anally, and vaginally on numerous other occasions.  Although appellant concedes these extraneous
offenses may have been admissible under Texas Evidence Rule 404(b) and article
38.37 of the Texas Code of Criminal Procedure, he claims that counsel should
have requested a limiting instruction to prevent the jury from considering them
for any purpose beyond that for which they were admitted.  Again, the record contains no explanation for
counsel=s failure to
request a limiting instruction, but it does indicate that he approved the jury
charge, which contained a limiting instruction. 
We find that, based on this record, appellant fails to overcome the
presumption that counsel=s failure to request a limiting
instruction was reasonable.  See
Ex parte Varelas, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) (finding
ineffective assistance in habeas proceeding when counsel filed affidavit
stating that failure to request limiting instruction was oversight, not trial
strategy); Mendez v. State, No. 13-03-127-CR, 2005 WL 1845632, at *2
(Tex. App.CCorpus Christi Aug. 04, 2005, pet. ref.=d) (not designated
for publication) (holding silent record insufficient to support ineffective assistance
claim for counsel=s failure to request limiting instruction
on extraneous offense).

Appellant further argues that counsel was
ineffective for failing to require the State to elect the specific offense upon
which it relied for conviction.  The
general rule is that where an indictment alleges one instance of sexual assault
and the trial evidence shows more than one instance, the State must elect the
offense upon which it relies for conviction. 
O=Neal v. State, 746
S.W.2d 769, 771 (Tex. Crim. App. 1988). 
Before the State rests its case in chief, the trial court has discretion
whether to direct the State to make an election.  Id. at 772.  After the State rests, upon timely request by
the defense, the trial court must order the State to make an election,
and failure to do so constitutes error.  Id.  Here, the State introduced testimonial
evidence of more than the two instances of sexual assault alleged in appellant=s indictments, and
counsel did not request elections at the close of the evidence.  However, failing to request elections could
have been sound trial strategy.  See
Peterson v. State, No. 01-02-00603-CR, 2003 WL 22681607, at *4 (Tex. App.CHouston [1st
Dist.] Nov. 13, 2004, pet. ref=d) (not designated
for publication) (explaining that double jeopardy bars subsequent prosecution
for any offense evidenced at trial if the State fails to elect which particular
offense it relies upon for conviction). 
Because the record is silent as to counsel=s reasons for not
requesting an election, which could have been a strategic choice, we cannot
presume counsel=s decision was unreasonable.  See Thompson, 9 S.W.3d at 814. 

Finally, appellant argues that he received
ineffective assistance because counsel failed to object to the prosecutor=s misstatement of
law during her closing argument. 
However, having reviewed the record, we disagree with appellant that the
prosecutor misstated the law.  The jury
charge contained the following instructions:

[A] conviction may
be had upon proof beyond a reasonable doubt that the offense, if any, was
committed at any time within the period of limitations.  The limitation period applicable to the
offense of aggravated sexual assault of a child is ten years from the date of
the 18th birthday of the victim of the offense.








In his closing argument, appellant=s counsel stated:

The second offense of penetrating [C.T.=s] vagina and anal
opening, there was never even a time or date put on that other than the
confused testimony as to whether it was May 8th or not May 8th or anything of
this nature.  So I don=t even think that
that was even proven by the prosecution. 

Defense counsel concluded after this statement, and
the prosecutor began her closing argument as follows:

In voir dire we talked about what the on or about language
means.  And if you look [at the jury
charge] . . . you will find an instruction that says that the State is not
bound by the specific date which the offense, if any, is alleged in the
indictment to have been committed but that conviction may be had upon proof
beyond a reasonable doubt that the offense, if any, was committed at any time
between the period of limitation.  The
limitation period applicable to the offense of aggravated sexual assault of a
child is ten years from the date of the 18th birthday of the victim of the
offense.  Well, . . . she turned eight last
Tuesday, so any offense that would have occurred, that you believe beyond a
reasonable doubt has occurred, has occurred within the period of the statute of
limitation.

(emphasis added). Appellant claims this language
allowed the jury to convict him non-unanimously or for offenses committed in
other states.  Although the prosecutor=s statement,
standing alone, could be construed as inviting the jury to convict appellant of
extraneous offenses presented at trial, viewed in context, it was clearly made
in response to defense counsel=s claim that the
State failed to prove the dates of the charged offenses and was intended to
illustrate the limitations period in the jury instructions.  This was not improper jury argument, and thus
counsel was not deficient in failing to object to it.  See Chatham v. State, 889 S.W.2d 345,
352 (Tex. App.CHouston [14th Dist.] 1994, pet. ref=d) (finding
counsel was not ineffective for failing to object to prosecutor=s alleged
misstatement of the law during closing argument when statement was
proper).  








Having rejected all appellant=s separate grounds
for ineffective assistance of counsel, we overrule his sole issue and affirm
the trial court=s judgment.

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed April 27, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  According to
Chavira, when she asked C.T. what she meant by Aoral
sex,@ C.T. explained that appellant Apulled his pants down, he pulled out his private part
and told [C.T. that she] could either suck it or he=d stick it in [her].@ 





[2]  C.T. first testified that appellant
put his penis in her vagina, mouth, and anus on May 8, 2004, the day Kelly
found them in the locked bedroom
together.  She then said she did not
remember exactly what he did that day or when he put his penis in her vagina,
but she remembered he put his penis in her vagina once before and in her mouth
and anus on multiple occasions.  





[3]  Martin
testified that she examined C.T.=s hymen
and found small abnormalities that could be caused by chronic rubbing or
wearing.  She also testified that C.T.=s hymen had an irregular narrowing that could indicate
an old, healed tear.  Additionally,
Martin noted that C.T.=s anus dilated rapidly and had a venous injury and a
fissure, which could indicate chronic anal penetration or a large bowel
movement.  Finally, Martin testified that
she saw broken blood vessels in the back of C.T.=s throat
that could be caused by trauma.





[4]  Although in a
heading in his brief, appellant claims counsel was ineffective for failing to
object to extraneous offenses, he offers neither argument nor authorities on
this issue; rather, it only nominally appears in his heading.  Thus, he has waived this issue for appellate
review.  Tex. R. App. P. 38.1(h).





[5]  Appellant
claims the alleged ineffectiveness violated his federal and state
constitutional rights.  Because he makes
no meaningful distinction between these rights, we consider his federal
constitutional claim only.  See Ruth v. State, 167 S.W.3d 560, 567 n.3 (Tex.
App.CHouston [14th Dist.] 2005, pet. ref=d). 





[6]  The State
suggests counsel may have obtained its expert list through an Aopen file@ policy,
which appellant does not refute.